## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENNIS MAYER, on Behalf of Himself and All Others Similarly Situated, | Case No. 1:23-cv-01299-LJV |
| Plaintiff, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| PATRIOT PICKLE INC., ARKK FOOD COMPANY, and WAHLBURGERS I, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Dennis Mayer ("Plaintiff"), by and through his undersigned attorneys, hereby submits this class action complaint (the "Complaint"), in his individual capacity as well as on behalf of all others similarly situated, against Patriot Pickle Inc. ("Patriot"), ARKK Food Company ("ARKK"), and Wahlburgers I, LLC ("Wahlburgers," and collectively with Patriot and ARKK, "Defendants").

Plaintiff's allegations set forth below are based upon personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of all publicly available information and court filings in related lawsuits against the Defendants.

## NATURE OF THE ACTION

1. This class action seeks to remedy the deceptive and misleading business practices of the Defendants with respect to the manufacturing, distribution, advertising, marketing, labeling, and sale of various kinds of Wahlburgers pickles including, without limitation, "Fresh Dill Spears" and "Fresh Dill Chips" (the "Products" or the "Pickles").

2.      Consumers have become increasingly aware and attentive to ingredient transparency and food processing when it comes to purchasing decisions. Companies like Defendants have capitalized on consumers' desire for purportedly "natural products." Here, Defendants have been producing, labeling, and shipping the Products nationwide while marketing the Pickles as "fresh," "all natural," and containing "no preservatives."   Unfortunately, none of these claims are true. Far from being "fresh," "all natural," and preservative free, the Pickles contain considerable amounts of sodium benzoate, an artificial chemical preservative designed to lengthen the Products' shelf life. Despite including this artificial preservative in their Products, Defendants go to considerable lengths to mislead consumers into believing the Products are free from such preservatives by making the following misrepresentations:

- Defendants place labels on the Products' containers stating that the Pickles are "All Natural" and contain "No Preservatives".

- Defendants prominently use the term "Fresh" as the first word for all their Pickles, such as "Fresh Dill Spears" and "Fresh Dill Chips." These labels are featured conspicuously at the top of the Products' containers and on the sides.

- Defendants sell the Pickles in the refrigerated section of grocery stores, often alongside fresh pickles. This bolsters consumer impression that the Products do not contain any artificial preservatives.

- Defendants omit sodium benzoate, an artificial chemical preservative, from the Products' ingredient list featured on the label.

3.      In fact, Defendants have admitted that their Products, at least prior to January 2023, contained sodium benzoate.  In their declarations filed in an action captioned *Grillo's Pickles, Inc. v. Patriot Pickle Inc*. et al, Docket No. 2:23-cv-00011 (D.N.J. Jan 03, 2023) (the "*Grillo* lawsuit"),

Defendants allege that they discovered in or around January 2023 that the Products were purportedly exposed to sodium benzoate through some transportation and/or manufacturing processes related to the Products. Defendants further represent that they have since taken remedial measures. However, Defendants did not inform Plaintiff and other consumers that they purchased Pickles containing the artificial preservative and made no steps to recall the Products that had been sold to the public.   Defendants have not made any announcement to consumers that their labelling, at least prior to January 2023, had been incorrect.

4.      Further, as detailed below, Products manufactured in or around March 2023 continue to contain sodium benzoate, despite Defendants' earlier representations to the contrary. Thus, Defendants did not take appropriate remedial steps to eliminate sodium benzoate from the Products and do not conduct sufficient testing to ensure the success of their remedial measures. Consumers have no way to check the veracity of these alleged remedial actions and be certain that the Products are now preservative free.

5.      Based on Defendants' representations, Plaintiff purchased the Products as early as 2021 and continued to purchase the product thereafter. Plaintiff and members of the Class (defined below) would not have purchased and paid a price premium for the Products, had it been known that these pickles were not free from preservatives.  Because Defendants' false and misleading representations duped and continue to dupe reasonable consumers into believing the Pickles feature premium attributes (are "fresh," "all natural," and free from artificial chemical preservatives), Plaintiff and the Class were injured and lost money.

6.      Prior to the filing of this Action, Plaintiff, through his counsel, addressed a letter to Defendants informing them about their deceptive acts and Plaintiff's intention to pursue his legal remedies under the applicable New York law.

7.     Defendants' deceptive practices violated and continue to violate New York General Business Law §§ 349 and 350 and their warranties regarding the Products.  Accordingly, Plaintiff brings this class action against Defendants on behalf of himself and other members of the Class who purchased the Products during the applicable statute of limitations period (the "Class Period").

**PARTIES**

**Plaintiff**

8.     Plaintiff Dennis Mayer is a resident and citizen of Erie Country, New York. Plaintiff is an individual customer who purchased multiple quantities of the Pickles at retail stores, including at Topps Friendly Stores located at 6262 Transit Road, Depew, New York 14043.

9.     Many of Plaintiff's purchases began in or around July 2021 and continued to purchase the product thereafter. Plaintiff's purchases happened prior to the filing of the *Grillo* lawsuit before Defendants' deceptions had become public knowledge. Indeed, Plaintiff relied upon Defendants' representations to make the decision to buy the Products, with the first purchases made close to the launch of the Pickles in or around July 2021.

10.     When purchasing the Products, Plaintiff relied upon the labelling and disclosures to be true and believed that he was paying a premium for the attributes he sought – all natural products.  Had Defendants not made the false, misleading, and deceptive representations and omissions alleged herein regarding the Products, Plaintiff would not have purchased these Products. The Products that Plaintiff received were worth less than the Products for which he paid. Accordingly, Plaintiff was injured and lost money due to Defendants' mislabeling and deceptive conduct.

**Defendants**

11.     Defendant Patriot is a Delaware corporation with its principal place of business in Wayne, New Jersey.  Upon information and belief, Patriot manufactures, packages, labels, and ships the Products from Patriot's facility in Wayne, New Jersey on behalf of ARKK and Wahlburgers I, LLC.  At all relevant times, Patriot failed to inform purchasers that the Products contained sodium benzoate.

12.     Defendant ARKK is a Michigan corporation with its principal place of business in Bloomfield Hills, Michigan.  ARKK creates and produced food products and is the exclusive licensee of Wahlburgers' retail products and distributor for the Products.  Upon information and belief, ARKK controls the entire line of Wahlburgers' retail products and engaged Patriot to manufacture, package, label, and ship the Products on ARKK's behalf.  Upon information and belief, ARKK has control over the Products' recipes and labeling, ARKK selected and approved the recipe for the Products jointly with Patriot, and ARKK and Patriot jointly created the labels for the Products. In fact, on the Products' labels, ARKK is featured as the distributer under a license from defendant Wahlburgers.

13.     Defendant Wahlburgers is a Massachusetts limited liability company with its principal place of business in Hingham, Massachusetts.  Wahlburgers is the owner of the Wahlburgers trademarks that appears on the Products' labels and, upon information and belief, has licensed these trademarks to ARKK.  Upon information and belief, as the licensor of the Wahlburgers trademarks and by virtue of its contractual relationship with ARKK, Wahlburgers has control over the Products' recipes and labeling.

## JURISDICTION & VENUE

14.     Jurisdiction is proper pursuant to New York Civil Practice Law and Rules ("CPLR") §§ 301 & 302. Venue is proper pursuant to CPLR § 503 because Plaintiff and many

members of the Class reside in this county, and throughout the State of New York. A substantial part of the events or omissions giving rise to the Plaintiff and Classes' claims occurred in this county.

15.     This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the State of New York, contract to supply goods within the State of New York, and supply goods within the State of New York.

## FACTUAL ALLEGATIONS

16.     Consumers have become increasingly concerned about the effects of synthetic, artificial, and chemical ingredients in food, dietary supplements, cleaning products, bath and beauty products, and everyday household products. In 2022, the overall natural and organic product sales in the U.S. grew an estimated 5.4% to $278 billion and specifically, the organic food and beverage category has now surpassed the $50 billion mark, representing a doubling of organic food and beverage sales since 2014.[1] Companies such as Defendants have capitalized on consumers' desire for purportedly "natural products." In 2021, Wahlburgers launched its line of pickles as part of its "Wahlburgers at Home" product line. As detailed below, Defendants chose to mislead, misrepresent and omit material information in order to succeed in the all-natural food industry.

A.     **Defendants Wrongly Market and Label the Products as "Fresh", "All Natural", and Containing "No Preservatives"**

---

[1]     Dawn Reiss, "Keynote: Natural & organic industry set to reach new milestone in 2023", (March 9, 2023), available at https://www.newhope.com/market-data-and-analysis/keynote-natural-organic-industry-set-to-reach-new-milestone-in-2023. (last accessed November 16, 2023). *See also* Zack Johnston, "Natural, Organic Food Sales on the Rise", (March 29, 2023), available at https://foodinstitute.com/focus/natural-organic-food-sales-on-the-rise/ (last accessed November 16, 2023).

17.     Defendants produce, label, market, sell, and distribute Wahlburgers pickles, including its different varieties: Fresh Dill Spears; Fresh Dill Chips; and Fresh Dill Chips Hot. Each Product makes the following representations very prominently on the labelling: that the Products are "Fresh", contain "no preservatives", and are "all natural". The labelling on these Products is provided below:

[See the following pages]

- "Wahlburgers Fresh Dill Chips":

 



- "Wahlburgers Fresh Dill Spears":

 

- "Wahlburgers Fresh Dill Chips Hot":

 



18.    Thus, as displayed, each label informs consumers that the pickles are "all natural,"

"fresh", and contain "no preservatives." The ingredients' list omits sodium benzoate and indicates

only natural ingredients.

19.     In the *Grillo* lawsuit, plaintiff provided a test analysis, performed by Biogen Laboratory Developments, revealing that the Products contain substantial amounts of benzoic acid, often added to foods *via* sodium benzoate, an artificial chemical preservative designed to lengthen the Products' shelf life. In fact, certificates of analysis from Biogen's testing (attached hereto as **Exhibit 1**) indicate, for example, Wahlburgers Hot Dill Chips pickles (a.k.a "Wahlburgers Fresh Dill Chips Hot") contain sodium benzoate in a concentration of 641 parts per million; Wahlburgers Dill Spears pickles (a.k.a. "Wahlburgers Fresh Dill Spears") contain sodium benzoate in a concentration of between 424 and 436 parts per million. Wahlburgers Dill Chips pickles (a.k.a. "Wahlburgers Fresh Dill Chips") contain sodium benzoate in a concentration of 600 parts per million.

20.     Sodium benzoate is defined as a chemical preservative in the Code of Federal Regulations.[2] Sodium benzoate is produced by the neutralization of benzoic acid with sodium bicarbonate, sodium carbonate, or sodium hydroxide.[3] Furthermore, sodium benzoate is not found to occur naturally.[4] Thus, the Pickles' labels misrepresent that the Pickles contain "no preservatives" and are "all natural" since the Pickles contain an artificial chemical preservative. Moreover, Defendants also cannot use the term "fresh" if the Pickles contain artificial chemical preservatives.[5] The label additionally wrongly omits sodium benzoate from the list of ingredients.

---

[2]     21 C.F.R. § Sec. 582.3733.

[3]     21 C.F.R. § 184.1733.

[4]     *Id*.

[5]     *See* 21 C.F.R. § 101.95(a) (stating the term "fresh" can be used when food "has not been frozen or subjected to any form of thermal processing or any other form of preservation").

21.     To further illustrate that sodium benzoate is a synthetic substance, regulatory agencies have provided relevant guidance. In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for the Classification of Materials as Synthetic or Nonsynthetic (Natural). Under this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e., naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e., a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter. Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources..." 7 U.S.C. § 6502 (21).

22.     Moreover, it does not appear that the addition of sodium benzoate was accidental. According to a sworn declaration by the expert conducting the Biogen testing (attached hereto as **Exhibit 2**):

> The level of sodium benzoate detected across all samples is present at intentional usage levels that the brine has been formulated with. Every Wahlburgers pickle sample received over a span of time, ranging from July 2022 into January 2023 from multiple geographies, contained similar levels of sodium benzoate. This trend illustrates a standard operating procedure for producing Defendants' "all natural" product with "no preservatives."
> See Ex. 2, ¶ 2 (emphasis added).

23.     The expert further stated, "[t]he data generated over the course of our investigation reveals a trend with relatively consistent levels of sodium benzoate which illustrates a known process." Ex. 2, ¶ 5 (emphasis added).

24.     Thus, Defendants engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from their misrepresentations and omissions regarding an artificial chemical preservative contained in the Pickles. If Defendants had disclosed, at the point of purchase, to Plaintiff and Class members that the Pickles contain sodium benzoate, they would not have purchased the Pickles or would have certainly paid less for the Pickles. As a consumer food product seller in the all-natural and organic food industry, Defendants had a duty to ensure that the Pickles did not contain sodium benzoate, including through regular testing, especially before injecting the Pickles into the stream of commerce for consumers to eat, where consumers pay a premium to purchase organic and all natural products.   But based on the testing results set forth above, Defendants made no reasonable effort to test their Pickles for sodium benzoate, despite their false and misleading labeling representations discussed above.

25.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label. Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.

26.     Defendants admit in their filings in the *Grillo* lawsuit that, at least until January 2023, the Products contained sodium benzoate.  This was in contradiction to their marketing and labeling claims that the Products were "all natural" and contained "no preservatives."  And yet, at no point in time before or after January 2023 did the Defendants inform consumers that their Products contained sodium benzoate, nor did the Defendants make any assurances to consumers that the Products distributed to retailers have been recalled.  To date, and upon information and belief, Defendants have not produced any scientific testing to evidence that their Products do not

contain sodium benzoate.  Further, Defendants continue to advertise and label the Products on the Wahlburgers website and in the marketplace as made with "all-natural ingredients" containing "no preservatives".

27.     Defendants further claim in their filings in the *Grillo* lawsuit that the exposure to sodium benzoate was the result of some transportation and manufacturing processes and they have since remedied this issue. As noted above, however, this does not appear to be the case as the addition seemed to be part of a "known" process. Further, the remedial actions also appear to be inadequate.

28.     In the *Grillo* lawsuit, the plaintiff conducted multiple testing of the different samples of the Pickles, which included a sample with a sell by date of July 2, 2023. The test showed a significant presence of sodium benzoate.  Because these Products have a 120-day expiration period, it can be reasonably inferred that contaminated Products were produced as late as March 2023. Thus, Defendants' representations that they have since remedied the contamination is either incorrect or inadequate. In any event, that the facts discussed herein demonstrate that the Pickles Plaintiff purchased contained sodium benzoate.

29.     Defendants therefore continue to misrepresent and mislabel the Products and have clearly failed to make their labelling accurate.  Even if Defendants' representation that they have taken remedial action is true, Defendants nonetheless failed and continue to fail to inform purchasers that at least until January 2023, their labelling was wrong and misrepresented critical facts to consumers. Even now, consumers have no way to check the veracity of the alleged remedial actions.

**B.**    **Defendants Breached Relevant State Law Through Their Deceptive Conduct and Caused Injuries to Plaintiff and the Class and the Public at Large**

30.    Based on the above, Defendants knew or should have known that the Pickles contain sodium benzoate, which does not occur naturally. This leads to a reasonable assumption that since these Pickles had a longer shelf life than truly fresh pickles, Defendants could hold on to their inventory for a longer time than they otherwise would be able to hold truly fresh pickles, affording Defendants a competitive advantage that is not available to companies that produce genuinely fresh pickles. However, because Defendants wanted to charge a premium for their Products, they made the above misrepresentations and omitted to put sodium benzoate as an artificial chemical preservative.

31.    Thus, reasonable consumers shopping for fresh, and/or all natural, and/or preservative-free pickles purchased and continue to purchase Defendants' Pickles based on the above representations and omissions made by Defendants at the point of sale. But for Defendants' false and misleading labeling representations, these customers would not have purchased Defendants' Pickles or would not have paid as much as they did. Moreover, most of the consumers who buy natural products, pay a premium because they don't want to consume artificial preservatives. These consumers, such as Plaintiff, would either not have purchased the Pickles or would have certainly not paid the premium they did. As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class members in that they:

- Paid a sum of money for Products that were not what Defendant represented;

- Paid a premium price for Products that were not what Defendant represented;

- Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

- Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

32.     Consequently, Plaintiff and Class members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

**CLASS ACTION ALLEGATIONS**

33.     Plaintiff brings this matter on behalf of himself and those similarly situated. As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices. Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

34.     The Class is defined as all consumers who purchased the Products in the State of New York at any time during the Class Period (the "Class"). Plaintiff reserves the right to modify, change or expand the definition of the Class based upon discovery and further investigation.

35.     The Class is properly brought and should be maintained as a class action under Article 9 of the CLPR, satisfying the class action prerequisites of numerosity, commonality, typicality, adequacy, predominance and superiority because:

36.     **Numerosity**: Class members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class who have been damaged by Defendants' deceptive and misleading practices.

37.     **Commonality**: The questions of law and fact common to the Class members which predominate over any questions which may affect individual Class members include, but are not limited to:

a.  Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased their Products;

b.  Whether Defendants made false and/or misleading statements;

c.  Whether the Products contain sodium benzoate;

d.  Whether Defendants breached the expressed and implied warranties of merchantability relating to the Products;

e.  Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants had engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

f.  Whether Defendants' false and misleading statements concerning their Products were likely to deceive the public,

g.  Whether Defendants charged a premium price for the Products;

h.  Whether Plaintiff and the Class Members were injured; and

i.  Whether Plaintiff and the Class Members are entitled to money damages under the same causes of action as the other Class Members.

38.     These issues predominate over individual issues. This controversy will largely turn on Defendants' uniform behavior in misrepresenting the Products to the Class which will be evaluated under an objective "reasonable person" standard. Individual inquiries into the conduct of members of the Class will not be necessary.

39.     **Typicality**: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class member in that every member of the Class was susceptible to the same deceptive, misleading conduct, purchased Defendants' Products, and suffered the same injury. Plaintiff is entitled to relief under the same causes of action as the other Class members.

40.     **Adequacy**: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class members he seeks to represent.  He has a strong interest in vindicating his rights and the rights of the Class.  He has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

41.     **Predominance and Superiority**: Questions of law or fact common to Class members predominate over any questions affecting individual members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

    a.   The joinder of thousands of individual Class members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b.   The individual claims of the Class members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    c.   When Defendants' liability has been adjudicated, all Class members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

    d.   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

    e.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.   This class action will assure uniformity of decisions among Class members;

g.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.   Class members' interests in individually controlling the prosecution of separate actions are outweighed by their interest in efficient resolution by single class action; and

i.   It would be desirable to concentrate in this single venue the litigation of all Class members who were induced by Defendants' uniform false advertising to purchase their Products.

42.   Accordingly, this Class are properly brought and should be maintained as a class action under Article 9 of the CPLR.

<u>**FIRST CAUSE OF ACTION**</u>
<u>**VIOLATION OF NEW YORK GBL § 349**</u>
<u>**(On Behalf of Plaintiff and the Class)**</u>

43.   Plaintiff repeats and realleges each and every allegation contained above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

44.   New York General Business Law Section 349 ("GBL § 349") declares that all "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state are . . . unlawful."

45.   Defendants' goods are offered for sale to the public and thus, Defendants' conduct constitutes conduct involving the "business, trade, or commerce" within the meaning of GBL § 349.

46.    Defendants misleadingly and deceptively represent the Products to consumers. Defendants further omitted material facts, including the presence of sodium benzoate in the Products (or that the Products risked containing sodium benzoate).

47.    Defendants' unlawful consumer-oriented conduct is misleading materially because Plaintiff and other class members believed that the Products were "fresh," "all natural," and preservative free and did not contain sodium benzoate

48.    Defendants knew or should have known that the Products contained sodium benzoate.

49.    Defendants should have disclosed such information because Defendants were in a superior position to know the true facts related to food ingredients and their processes of food production.

50.    Defendants' misrepresentations and omissions were material because consumers (including Plaintiff and Class Members) are concerned with the ingredients of the food they consume and the processes behind making them.  Defendants' misrepresentations and omissions induced consumers to buy the Products.

51.    Plaintiff has standing to pursue this claim because he has been injured by virtue of suffering a loss of money as a result of the wrongful conduct alleged herein.  Plaintiff would not have purchased the Products (or paid as much for it) had he known the truth.  As a direct or proximate result of Defendants' misrepresentations and omissions of material facts, Plaintiff and Class Members did not obtain the value of the Products for which they paid; were induced to make purchases that they otherwise would not have; and lost their ability to make informed and reasoned purchasing decisions.

52.     The damages suffered by Plaintiff and the Class Members were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendants, as described herein.

53.     As a result of Defendants' deceptive acts and practices, Plaintiff and other Class Members are entitled to monetary and compensatory damages, interest, and attorneys' fees and costs. This includes actual damages under GBL § 349 and statutory damages of $50 per unit purchased pursuant to GBL § 349.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the Class)**

54.     Plaintiff repeats and realleges each and every allegation contained above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

55.     New York General Business Law § 350 ("GBL § 350") provides, in part, as follows: False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this State is hereby declared unlawful.

56.     GBL § 350-A(1) expressly covers material omissions: "The term 'false advertising,' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual."

57.     Defendants' labeling and advertisements contain untrue and materially misleading statements concerning Defendants' Products because they misrepresent that the Products were "Fresh", "all natural", and contained "no preservatives." Further, Defendants omitted to provide that the Products contained sodium benzoate.

58.     Defendants' advertising and products' labeling induced Plaintiff and the Class Members to buy Defendants' Products.

59.     Plaintiff and other Class Members have been injured since they, having viewed Defendants' label, paid a premium for the Products. Plaintiff and other Class Members paid more than the Products they bargained for and received were worth.

60.     Defendants knew or should have known that the Products contained sodium benzoate. Defendants engaged in unlawful conduct as alleged herein willfully, wantonly, and with reckless disregard for the truth

61.     Defendants should have disclosed such information because Defendants were in a superior position to know the true facts related to food ingredients and the processes of their food production.

62.     Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.   Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

63.     As a result of Defendants' acts and practices in violation of GBL § 350, Plaintiff and class members are entitled to monetary and compensatory damages, restitution, and disgorgement of all monies obtained using Defendants' unlawful conduct, interest, and attorneys' fees and costs, as well as statutory damages of $500 per Product purchased.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
### (On Behalf of Plaintiff and the Class)

64.     Plaintiff repeats and realleges each and every allegation contained above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

65.     Defendants provided Plaintiff and Class members an express warranty in the form of written affirmations of fact promising and representing that its Products are "Fresh", "all natural," and contain "no preservatives."

66.     The above affirmations of fact were not couched as "belief or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

67.     These affirmations of fact became part of the basis for the bargain and were material to the transaction for the Plaintiff's and Class Members' transactions.

68.     Plaintiff and Class Members reasonably relied upon the Defendants' affirmations of fact and justifiably acted without knowledge of the material facts omitted or concealed when they decided to buy Defendants' product.

69.     Within a reasonable time after he knew or should have known of Defendant's breach, Plaintiff, on behalf of himself and Class Members, placed Defendants on notice of their breach by mailing Defendants a pre-suit letter on October 10, 2023. Defendants had opportunities to cure their default but failed to do so.

70.     Defendants thereby breached the express warranty because the Products were not a) "all natural," and "fresh", and b) contained sodium benzoate, at least prior to January 2023.

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT
## (On Behalf of Plaintiff and the Class)

71.    Plaintiff repeats and realleges each and every allegation contained above and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

72.    Plaintiff, on behalf of himself and consumers statewide, brings a claim for unjust enrichment.

73.    Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

74.    Defendant's unlawful conduct as described in this Complaint allowed Defendants to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class members, and to Defendants' benefit and enrichment. Defendants have thereby violated fundamental principles of justice, equity, and good conscience.

75.    Plaintiff and Class members conferred significant financial benefits and paid substantial compensation to Defendants for the Products, which were not as Defendants represented them to be.

76.    Under New York's common law principles of unjust enrichment, it is inequitable for Defendants to retain the benefits conferred by Plaintiff and Class members' overpayments.

77.    Plaintiff and Class members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the Class, prays for relief as follows:

A.    Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Article 9 of the CPLR;

B.    Directing Defendant to correct their practices and to comply with New York law;

C.    Awarding monetary damages, excluding treble and/or punitive damages as being consistent with New York State Class Action jurisprudence, pursuant to GBL § 349 and GBL § 350;

D.    Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

E.    Granting such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and on behalf of the Class, hereby demands that this matter be tried before a jury.

Dated: January 12, 2024                        Respectfully submitted,

                                                               POMERANTZ LLP

                                                               */s/ Gustavo F. Bruckner*
                                                               Gustavo F. Bruckner (admitted *pro hac vice*)
                                                               Samuel J. Adams
                                                               Ankita Sangwan (admitted *pro hac vice*)
                                                               600 Third Avenue, 20th Floor
                                                               New York, New York 10016
                                                               Telephone: (212) 661-1100
                                                               Facsimile: (917) 463-1044

gfbruckner@pomlaw.com
sjadams@pomlaw.com
asangwan@pomlaw.com

THE FINK LAW FIRM, P.C.
Steven M. Fink
488 Madison Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 280-6600
Facsimile: (212) 898-1117
sfink@thefinklawfirmpc.com

*Attorneys for Plaintiff*